# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**MADDENCO INC.**                                             **CIVIL ACTION**

**VERSUS**

**JAMES REED, ET AL.**                          **NO. 23-01391-BAJ-SDJ**

## RULING AND ORDER

In this action, Plaintiff (MaddenCo Inc.), a corporation that develops and supports integrated software systems for independent tire dealers and truck stop services centers, pursues claims of copyright infringement, breach of contract, and breach of fiduciary duties against its former employees (Defendants Reed and Darby) and their new employer (Defendant HG AutoTech). Plaintiff alleges that Defendants Reed and Darby infringed upon Plaintiff's copyright by using its confidential software code to develop competing software for Defendant HG AutoTech.

Defendants brought five counterclaims against Plaintiff: (1) a wrongful copyright claim; (2) violation of the Louisiana Unfair Trade Practices Act ("LUTPA"), La. Stat. Ann. § 51:1405; (3) breach of contract; (4) defamation; and (5) abuse of process. (Doc. 151). Now before the Court is Plaintiff's **Motion For Partial Summary Judgment (Doc. 165)**, which seeks to dismiss all counterclaims besides breach of contract. Defendants oppose Plaintiff's motion. (Doc. 168). Plaintiff filed a reply. (Doc. 169). For the reasons stated herein, Plaintiff's Motion will be **GRANTED**.

## I.    BACKGROUND

The following facts are undisputed, as set forth in MaddenCo's Statement Of Material Facts In Support Of Motion For Partial Summary Judgment (Doc. 166, "MC SOF"), Plaintiff's Response To MaddenCo's Statement Of Material Facts and Statement Of Additional Material Facts  (Doc. 168 at 1–11, "Response SOF" and "Response SOAF"), the Parties' Joint Pretrial Order (Doc. 179, "Joint PTO"), and the record evidence submitted in support of these pleadings.

Defendant Darby left employment as a software developer for Plaintiff in 2021 and began working for Defendant HG AutoTech immediately after. (Joint PTO ¶¶ 4–5). Defendant Reed left employment as a software development manager for Plaintiff in 2021 and began working for Defendant HG AutoTech shortly after. (*Id.* ¶¶ 2–3). Both MaddenCo and HG AutoTech utilize GeneXus, an auto-generation tool, in the development of their respective software programs. (*Id.* ¶ 7). Defendants Darby and Reed had full access to MaddenCo's source code and GeneXusKnowledge Base, a feature of GeneXus used in the development of software, while employed there. (Joint PTO ¶ 6). However, Defendants Darby and Reed claim that upon leaving MaddenCo, they did not take MaddenCo's files with them. (Response SOAF ¶ 1).

In September and October 2022, MaddenCo enlisted an IT company to investigate whether Defendant Darby had taken any confidential information with him when he left MaddenCo. (Doc. 168-6). The company's forensic report concluded that: "No strong evidence of Intellectual Property theft was found at this time. Several obstacles prevented the capture of forensic artifacts from the time frame in

question." (*Id.* at 6). An accompanying email from the company stated: "At this time, we have not found any evidence of IP theft and/or data exfiltration." (*Id.* at 1). In October 2022, MaddenCo sued Defendants Darby, Reed, and HG AutoTech for allegedly using MaddenCo's confidential information, including its software code, to recreate, copy, or develop an alternative code for products competitive to MaddenCo's products. (Doc. 2 ¶ 17).

In August 2023, the parties engaged Quandary Peak Research ("Quandary") to conduct a neutral review of Plaintiff and Defendant HG AutoTech's source code to determine if Defendant HG AutoTech infringed on or misappropriated MaddenCo's copyrighted system. (Response SOAF ¶ 61). However, following the issuance of Quandary's report, MaddenCo asserted that it did not provide all of its source code to Quandary, and therefore Quandary would need to conduct the analysis again. (Doc. 168-9 ¶ 32). MaddenCo agreed to pay for the new analysis, but did not complete the new analysis or pay Quandary for the new analysis. (*Id.* ¶ 32).

Prior to the filing of the lawsuit, Tireweb was considering working with HG AutoTech. (Response SOAF ¶ 21). MaddenCo informed Tireweb that it was considering filing a lawsuit against HG AutoTech. (*Id.* ¶ 26). In August 2023, Tireweb stopped doing business with HG AutoTech (*Id.* ¶¶ 28–29). Thereafter, Southern Tire Mart, an important client of HG AutoTech, also terminated its contract with HG AutoTech. (*Id.* ¶ 38). Two more companies, Champion Tire and National Tire, were considering entering a business partnership with HG AutoTech but later decided not

to. (*Id.* ¶¶ 48, 49, 52). HG AutoTech contends that MaddenCo convinced these clients to end their business relationships with HG AutoTech. (*Id.* ¶¶ 19–54).

Now, Plaintiff moves for summary judgment on the following counterclaims asserted by Defendants: (1) a wrongful copyright claim, in which Defendants request attorney's fees; (2) violation of LUTPA; (3) defamation; and (4) abuse of process.

## II.    LEGAL STANDARD

A district court should "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Funches v. Progressive Tractor & Implement Co., L.L.C.*, 905 F.3d 846, 849 (5th Cir. 2018) ("This occurs when a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

For issues on which the movant bears the burden of proof at trial, they "must come forward with evidence which would entitle [them] to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence establishing a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

Where the nonmovant bears the burden of proof at trial, the moving party must offer evidence that undermines the nonmovant's claim or point out the absence of

evidence supporting essential elements of the claim. *See Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 885 (1990). Once the movant shows entitlement to judgment as a matter of law, the nonmovant must bring forward evidence to create a genuine issue of material fact. *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018).

### III. ANALYSIS

#### A. Choice-of-Law for State Law Claims.

As a preliminary matter, the Court addresses whether Louisiana or Indiana law applies to Defendants' counterclaims. Plaintiff argues in its Motion that Louisiana law applies to HG AutoTech's state law counterclaims, and Indiana law applies to Defendants Reed and Darby's state law counterclaims.[1] Defendant argues that Louisiana law applies to all Defendants' state law counterclaims, and that MaddenCo waived any arguments to the contrary when it accepted the application of Louisiana law to all Defendants' state law counterclaims at the motion to dismiss stage.

---

[1] Plaintiff argues that because the Court previously determined that Louisiana law applies to Plaintiff's state law claims against Defendant HG AutoTech and Indiana law applies to Plaintiff's state law claims against Defendants Reed and Darby (*see* Doc. 150 at 16–17), Louisiana law applies to Defendant HG AutoTech's state law counterclaims against Plaintiff and Indiana law applies to Defendants Reed and Darby's state law counterclaims against Plaintiff. (Doc. 167 at 6). The Court determined that because Defendants Reed and Darby did not contest that Indiana state law applies to Plaintiff's state law claims, they waived any choice-of-law arguments with respect to Plaintiff's state law claims. (Doc. 150 at 13 n.3).

5

The Court agrees that Plaintiff has accepted that Louisiana law applies to all Defendants' counterclaims. Defendants asserted their counterclaims under Louisiana law (by bringing a counterclaim specifically under the Louisiana Unfair Trade Practices Act and by citing only to Louisiana case law in their briefing at the motion to dismiss stage), and Plaintiff conceded that Louisiana law applied (by citing only to Louisiana case law in their briefing at the motion to dismiss stage). (*See* Doc. 151; Doc. 156) Therefore, Louisiana law applies to all Defendants' counterclaims, as the failure to raise an argument or adequately brief an issue in a motion to dismiss generally amounts to a waiver of the same. *See JMCB, LLC v. Bd. of Com. & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) ("[F]ailure to brief an argument in the district court waives that argument in that court.").

### B. Wrongful Copyright Claim.

Defendants "wrongful copyright claim" counterclaim asserts that Plaintiff's copyright infringement claim against them is frivolous and that, pursuant to 17 U.S.C. § 505, which allows courts to discretionarily award full costs and attorney's fees to prevailing parties in copyright infringement cases, they are entitled to full costs and attorney's fees for defending against Plaintiff's copyright infringement claim. (Doc. 151 ¶¶ 29–31). Plaintiff moves for summary judgment on this counterclaim, asserting that the statute does not create an independent cause of action to be asserted as a counterclaim by a party defending a copyright infringement claim.

6

The Court finds *Sater Design Collection v. Guerra* instructive on this matter. 2010 U.S. Dist. LEXIS 164135 (S.D. Tex. April 8, 2010). In *Guerra*, defendants brought a counterclaim against the plaintiff for filing a frivolous copyright infringement lawsuit, in which they sought costs, attorney's fees, and expenses. The United States District Court for the Southern District of Texas dismissed the counterclaim, holding that it was not legally cognizable. *Id.* at 2. The court found "no legal basis supporting the existence of an independent counterclaim under federal or [state] law for bringing an allegedly frivolous lawsuit." *Id.* at 4. The Southern District of Texas also elaborated that "the existence of such a claim is unlikely, since the relief sought by the Defendants through their counterclaim is available to them either through a request for costs and attorney's fees under 17 U.S.C. § 505, or through a motion for sanctions pursuant to [Federal Rule of Civil Procedure] Rule 11." *Id.* at 4–5.

This Court, too, finds no independent cause of action under federal or Louisiana law for a "wrongful copyright claim" counterclaim. Because there is no independent cause of action, and because granting cost and attorney's fees prior to the adjudication of the federal copyright claim would be inappropriate, this Court dismisses the "wrongful copyright claim" counterclaim without prejudice. However, Plaintiff may still be entitled to these costs and fees under 17 U.S.C. § 505 at a later stage of the litigation.

7

### C. LUTPA.

Defendants assert two theories for its contention that Plaintiff violated LUTPA: (1) Plaintiff filed its lawsuit to deter clients from working with Defendant HG AutoTech, despite knowing there was no evidence behind its copyright infringement counterclaim; and (2) Plaintiff colluded with other businesses to harm Defendant HG AutoTech and prevent it from successfully working with customers. (Doc. 151 ¶¶ 32–36). Plaintiff argues that a LUTPA claim cannot be premised on the filing of a lawsuit, and that Defendants have no evidence to support their collusion theory.

LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" La. Stat. Ann. § 51:1405. "To recover, the plaintiff must prove some element of fraud, misrepresentation, deception or other unethical conduct.'" *IberiaBank v. Broussard*, 907 F.3d 826, 839 (5th Cir. 2018) (citation modified). "It has been left to the courts to decide, on a case-by-case basis, what conduct falls within the statute's prohibition." *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 2009-1633 (La. 4/23/10), 35 So. 3d 1053, 1059.

Courts have determined that "the range of prohibited practices under LUTPA is extremely narrow." *Id.* "Therefore, only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA." *Id.* at 1055. In establishing a LUTPA claim, "the plaintiff must show the alleged conduct offends established public policy and . . . is immoral,

8

unethical, oppressive, unscrupulous, or substantially injurious." *Id.* at 1059 (citation modified). However, "LUTPA does not prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions." *Id.* at 1060 (citing *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993)).

With respect to Defendants" first LUTPA theory—that bringing the lawsuit is a violation of LUTPA—the Court finds *Newton v. Brenan* and *Ring St., LLC v. Cypress Connects, LLC* instructive on this topic. *Newton v. Brenan*, 14-423 (La. App. 5 Cir. 12/16/14),  166 So. 3d 285; *Ring St., LLC v. Cypress Connects LLC*, No. CV 23-1486, 2023 WL 6121792 (E.D. La. Sept. 19, 2023). In *Newton*, the plaintiff sued his former business partner for theft of company assets. *Newton*, 166 So. 3d 285 at 288. The defendant counterclaimed that the plaintiff's filing of the lawsuit was retaliatory in nature and therefore qualified as a LUTPA violation. *Id.* The trial court dismissed the LUTPA counterclaim. *Id.* The appellate court affirmed the trial court's dismissal, reasoning: "while the lawsuit filed by [the plaintiff] was arguably the result of months of rancorous disputes between the parties, a review of the record reveals that [the plaintiff] may arguably have some cognizable legal claims against [the defendant]. [The plaintiff's] effort to exercise his juridical rights in connection with these claims is not an unfair trade practice under LUTPA. Accordingly, because the underlying behavior was not an unethical trade practice, the trial court's dismissal of [the defendant's] LUTPA claim was appropriate." *Id.* at 290.

Similarly, in *Ring St., LLC*, the plaintiff claimed that its former employees stole confidential business information to start a competing business. *Ring St., LLC,*

9

2023 WL 6121792 at 1. The defendant filed a counterclaim accusing the plaintiff of violating LUTPA by filing the action. *Id.* at 2 (defendant arguing "that the bad faith filing of litigation, brought to harass, oppress, or destroy a business competitor, is actionable under LUTPA"). The court found that the plaintiff had pleaded cognizable legal claims against the defendant at that stage of the litigation. *Id.* at 5. Therefore, plaintiff's filing of the lawsuit "[did] not rise to the level of an unfair trade practice under LUTPA," and the court dismissed defendant's LUTPA counterclaim. *Id.* at 5.

Here, Plaintiff "may arguably have some cognizable legal claims" against Defendants, as multiple claims against Defendants remain following this Court's previous Ruling on Defendants' Motion to Dismiss. *Newton*, 166 So. 3d 285 at 290; Doc. 150. To the extent that Defendants' LUTPA counterclaim is premised on Plaintiff's filing of the still-pending lawsuit, this counterclaim is dismissed without prejudice.

The Court next turns to Defendants' second LUTPA theory: that Plaintiff violated LUTPA by "actively conspire[ing] with other businesses to harm HG AutoTech and prevent it from successfully working with customers." (Doc. 151 ¶ 34). Defendants argue that "While HG AutoTech does not have direct evidence of MaddenCo's conspiratorial actions and plans to harm HG AutoTech, the circumstantial evidence showing MaddenCo's connections to certain individuals, the harmful actions those individuals took against HG AutoTech, and MaddenCo's use of the lawsuit to prevent HG AutoTech from gaining or keeping customers, clearly establishes unfair competition." (Doc. 168 at 16–17). As Plaintiff points out, most of

Defendants' facts are inadmissible hearsay or unsupported allegations. Both of these are insufficient to support a counterclaim at the summary judgment stage. *See Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 654 (5th Cir. 2004) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment."); *Floyd v. Chilly's L.L.C. of Ala.*, No. CV 15-00544-BAJ-RLB, 2017 WL 1455024, at *4 (M.D. La. Apr. 21, 2017) ("As to [p]laintiff's hearsay objection, plaintiff is correct that when the affidavit contains hearsay, such hearsay from the affidavit is inadmissible."); *Hensley v. Harrell*, No. CV 21-517-SDD-SDJ, 2024 WL 3513869, at *1 (M.D. La. July 22, 2024) ("[T]he portions of the affidavit that speak to the issues of this case are hearsay and cannot be considered" on summary judgment.); *Warfield v. Byron*, 436 F.3d 551, 559 (5th Cir. 2006) ("[T]he hearsay rule applies with equal force in the context of a summary judgment."). The exception is MaddenCo's communications with Tireweb, which come in the form of an email exhibit. (Doc. 168-7; Doc. 168-10). However, these sets of emails only indicate that Tireweb issued a cease-and-desist letter against HG AutoTech for using its logo without permission; and that MaddenCo informed Tireweb it was proceeding with litigation. These email exchanges do not indicate the kind of egregious wrongdoing sufficient to meet the high bar set by LUTPA.

Accordingly, the Court finds that Defendants have not produced sufficient summary judgment evidence to support their LUTPA counterclaim. Therefore, Defendants' LUTPA counterclaim is dismissed without prejudice. However, this

11

ruling does not preclude Defendants' ability to bring a LUTPA claim against Plaintiff at a later time should evidence developed at trial support such a claim.

### D. Defamation.

Defendants next claim that Plaintiff made defamatory statements about them with knowledge of the falsity of the statements, by: (1) publishing those statements in its lawsuit and (2) boasting about the lawsuit to Defendant HG AutoTech's clients and potential clients.

There are five elements to a defamation claim under Louisiana law. Those are: "(1) defamatory words; (2) publication to a person other than the one defamed; (3) falsity; (4) malice; and (5) resulting injury." *Hoffman v. Bailey*, 257 F. Supp. 3d 801, 819 (E.D. La. 2017) (quoting *Bell v. Rogers*, 29,757 (La. App. 2 Cir. 8/20/97), 698 So.2d 749, 753).  Plaintiff argues that the Court must resolve Plaintiff's copyright infringement claim before Defendants can bring this counterclaim. That is, the Court must determine whether Plaintiff's copyright infringement statements are false (by resolving Plaintiff's copyright infringement claim) before it can turn to Defendants' defamation counterclaim. The Court agrees with Plaintiff.

With respect to Defendants' first theory of defamation—that Plaintiff's mere act of publishing allegations against them in its lawsuit is defamatory—established law makes clear that such theory is premature. "For defamation claims arising out of allegations made in judicial proceedings and against a party to those proceedings, Louisiana law states that the defamation action cannot be brought until those proceedings are terminated." *Ortiguerra v. Grand Isle Shipyard, LLC*, No. CV 22-309,

12

2023 WL 346089, at 3 (E.D. La. Jan. 20, 2023) (citing *5-Star Premium Finance, Inc. v. Wood*, No. 99-3705, 2000 WL 1678010, at 3 (E.D. La. 2000)). "A party must have the opportunity to prove the truth or falsity of their allegations before an opposing party can counterclaim for defamation and reputational harm." *Id.* (citing *5-Star Premium Finance, Inc.*, 2000 WL 1678010, at 1) (cleaned up). "Providing this opportunity allows . . . for the determination of the outcome of the original proceedings, which may bear on a party's ability to recover for defamation." *Id.* "Defendants must wait until the conclusion of the instant litigation, which will most likely determine the truth or falsity of the statements, before bringing a claim for defamation or defamation per se based on statements Plaintiffs made in their pleadings. After this Court resolves this phase of litigation, Defendants may choose whether or not to pursue their defamation claims." *Id.* Thus, while the Court makes no judgment as to the ultimate merits of Defendants' defamation counterclaim, this Court must resolve Plaintiff's copyright infringement claim before adjudging Defendants' defamation counterclaim.

With respect to Defendants' second theory of defamation—that Plaintiff's act of discussing the lawsuit (and/or the allegations contained in the lawsuit) with Defendants' clients and potential clients is defamatory—this Court similarly finds little merit. Defendants first allege that MaddenCo discussed the lawsuit with four of Defendants' clients or potential clients (Tireweb, Southern Tire Mart, Champion Tire, and Beacon). (*See* "Response SOAF" ¶¶ 26, 42, 50, 54). Most of these statements are inadmissible hearsay, which, as Defendants are aware, are not competent

13

summary judgment evidence. The exception is MaddenCo's communications with Tireweb, which come in the form of an email exhibit. However, the communications in the email do not support a defamation counterclaim. MaddenCo merely informs Tireweb that MaddenCo was planning to file a lawsuit against Defendants, which is a true statement and cannot satisfy the defamation falsity element. (Doc. 168-7 at 1). Therefore, Defendants have not provided evidence sufficient to satisfy their second defamation theory at this stage of the litigation.

Accordingly, Defendants' defamation counterclaim is dismissed without prejudice.

### E. Abuse of Process.

Finally, Defendants bring an abuse of process claim against Plaintiff. Defendants argue that Plaintiff filed the lawsuit and shared the lawsuit's allegations with Defendant HG AutoTech's clients and potential clients in order to damage Defendants' professional reputation, despite knowing that its copyright infringement allegations were false. Plaintiff argues that the Court should only address the abuse of process counterclaim once its copyright infringement claim is resolved.

"An abuse of process occurs when the actor employs [the] legal process in a manner technically correct, but for a wrongful and malicious purpose to obtain an unjustifiable end or an object which is was not the purpose of the particular process employed to effect." *Delcambre v. Mancuso*, 268 So. 3d 325, 331 (La. App. 3 Cir. 4/10/19) (cleaned up). "An abuse of process claim has two essential elements: (1) the existence of an ulterior purpose and (2) a willful act in the use of the process not

14

proper in the regular prosecution of the proceeding." *Panepinto v. Panepinto*, 23-297 (La. App. 5 Cir. 3/20/24), 384 So. 3d 1089, 1094. Although in some states an abuse of process claim cannot be made where the alleged abuse is the mere filing of a lawsuit, *see, e.g.*, *Moon v. Condere Corp.*, 690 So.2d 1191, 1197 (Miss. 1997), in Louisiana, courts employ a more fact-dependent analysis. *See ENTU Auto Servs. Inc. v. PickMyRide.Biz LLC*, No. CIV. 6:15-1183, 2015 WL 6692144, at 5 (W.D. La. Oct. 5, 2015), *report and recommendation adopted*, No. CIV. 6:15-1183, 2015 WL 6736845 (W.D. La. Nov. 3, 2015) (declining to dismiss abuse of process claim premised on the filing of a lawsuit in the wrong venue to raise costs and compete with business); *Ratcliff v. Boydell*, 93-0362 (La. App. 4 Cir. 4/3/96), 674 So. 2d 272, 280–81, *as amended on reh'g* (May 31, 1996) (affirming judgment for abuse of process arising from the filing of multiple malicious lawsuits); *Palazzo v. Berry*, 2011 U.S. Dist. LEXIS 121731, at \*4 (an abuse of process counterclaim "will not be ripe until the [copyright infringement] claims asserted in the complaint are resolved"). Defendants argue that their facts prove that MaddenCo filed the lawsuit to dissuade potential customers from doing business with HG AutoTech and attempt to convince current customers not to do business with HG AutoTech. However, as noted, these facts are inadmissible hearsay or purely speculative, and thus not sufficient to support the abuse of process counterclaim at this stage of the litigation. Courts have not "allowed a party's otherwise unsupported, conclusional testimony to create a factual dispute sufficient to defeat a motion for summary judgment." *Hathcock v. Acme Truck Lines, Inc.*, 262 F.3d 522, 526–27 (5th Cir. 2001). Therefore, the Court

15

dismisses Defendants' abuse of process counterclaim without prejudice.

### IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's **Motion For Partial Summary Judgment (Doc. 165)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' "wrongful copyright claim" counterclaim, Louisiana Unfair Trade Practices Act counterclaim, defamation counterclaim, and abuse of process counterclaim are **DISMISSED WITHOUT PREJUDICE**.

Baton Rouge, Louisiana, this 11th day of August, 2026

_____

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**