**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**MADDENCO INC.** **CIVIL ACTION**

**VERSUS**

**JAMES REED, ET AL.** **NO. 23-01391-BAJ-SDJ**

**RULING AND ORDER**

In this action, Plaintiff (MaddenCo Inc.), a corporation that develops and supports integrated software systems for independent tire dealers and truck stop services centers, pursues claims of copyright infringement, breach of contract, and breach of fiduciary duties against its former employees (Defendants Reed and Darby) and their new employer (Defendant HG AutoTech). Plaintiff alleges that Defendants Reed and Darby infringed upon Plaintiff's copyright by using its confidential software code to develop competing software for Defendant HG AutoTech.

Defendants brought five counterclaims against Plaintiff: (1) a wrongful copyright claim; (2) violation of the Louisiana Unfair Trade Practices Act ("LUTPA"), La. Stat. Ann. § 51:1405; (3) breach of contract; (4) defamation; and (5) abuse of process. (Doc. 151). After filing the instant Motion To Dismiss Counterclaims (Doc. 156), Plaintiff filed a Motion For Partial Summary Judgment (Doc. 165) that sought to dismiss all Defendants' counterclaims except the breach of contract counterclaim. The Court granted the Motion in full. (Doc. 202). Accordingly, only the breach of contract counterclaim remains pending.

Now before the Court is Plaintiff's **Motion To Dismiss Counterclaims (Doc. 156)**, challenging the breach of contract counterclaim. Defendants oppose Plaintiff's motion. (Doc. 159). Plaintiff filed a reply. (Doc. 160). For the reasons stated herein, Plaintiff's Motion will be **DENIED**.

## I. ALLEGED FACTS

The facts of this case have previously been described in detail in the Court's previous rulings. Nonetheless, the following facts are accepted as true for purposes of resolving this Motion.[1]

Defendant Darby left employment as a software developer for Plaintiff in 2021 and began working for Defendant HG AutoTech immediately after. (Joint PTO ¶¶ 4–5). Defendant Reed left employment as a software development manager for Plaintiff in 2021 and began working for Defendant HG AutoTech shortly after. (*Id.* ¶¶ 2–3). Both MaddenCo and HG AutoTech utilize GeneXus, an auto-generation tool, in the development of their respective software programs. (*Id.* ¶ 7). In fact, because Defendant Darby was experienced in using GeneXus to program, the company chose to utilize GeneXus as its primary programming method. (Doc. 151 ¶ 10). Defendants Darby and Reed had full access to MaddenCo's source code and GeneXusKnowledge Base while employed there. (Joint PTO ¶ 6). However, Defendants Darby and Reed claim that upon leaving MaddenCo, they did not take MaddenCo's files with them.

---

[1] The undisputed facts are set forth in MaddenCo's Statement Of Material Facts In Support Of Motion For Partial Summary Judgment (Doc. 166, "MC SOF"), Plaintiff's Response To MaddenCo's Statement Of Material Facts and Statement Of Additional Material Facts (Doc. 168 at 1–11, "Response SOF" and "Response SOAF"), the Parties' Joint Pretrial Order (Doc. 179, "Joint PTO"), and the record evidence submitted in support of these pleadings.

(Response SOAF ¶ 1). In October 2022, MaddenCo sued Defendants Darby, Reed, and HG AutoTech for allegedly using MaddenCo's confidential information, including its software code, to recreate, copy, or develop an alternative code for products competitive to MaddenCo's products. (Doc. 2 ¶ 17).

In August 2023, the parties engaged Quandary Peak Research ("Quandary") to conduct a neutral review of Plaintiff and Defendant HG AutoTech's source code to determine if Defendant HG AutoTech infringed on or misappropriated MaddenCo's copyrighted system. (Doc. 151 ¶ 37). The parties agreed to share the initial retainer of $30,000 and fees in excess of the retainer amount. (*Id.* ¶ 38). The parties also agreed that if the review determined that Defendant HG AutoTech's source codes did not show evidence of copyright infringement, Plaintiff would pay the cost of the review. (*Id.* ¶¶ 38–39). The parties then provided their source codes to Quandary. (*Id.* ¶ 40). By the end of February 2024, the retainer had been fully exhausted and both parties agreed to continue to share the additional costs through delivery of Quandary's report. (*Id.* ¶ 41).

Quandary's report determined that both parties' software included source code automatically generated using the same auto-generation tool (GeneXus). (*Id.* ¶ 42). According to the report, both parties' software contained some identical content, but the overlapping content was either authored by GeneXus or constituted of source code customary to the computer science industry. (*Id.* ¶ 42). In other words, there was no overlap in protectable, human-designed source code. (*Id.*). Because Defendant HG AutoTech's source code did not show evidence of copyright infringement, Defendants

claim that Plaintiff is obligated to reimburse Defendants for the amount they spent to have the neutral review conducted. (*Id.* ¶ 45).

Following the issuance of Quandary's report, Plaintiff asserted that an error had inadvertently occurred during its transfer of source code to Quandary, resulting in a significant portion of its source code being omitted from its original analysis. (*Id.* ¶ 46). Quandary offered the parties the option of conducting a second-round review, which would incorporate the new source code produced by Plaintiff. (*Id.* ¶ 47). Defendant HG AutoTech declined to fund any corrective work on the basis that Plaintiff's oversight required the second-round review. (*Id.*). Plaintiff elected to proceed with the second-round review and agreed to bear the full cost of the additional work. (*Id.* ¶ 48). The parties memorialized this understanding in an email with Quandary. (*Id.* ¶¶ 47–48). However, Plaintiff subsequently refused to provide its full source code to Quandary and refused to pay for Quandary's continued services. (*Id.* ¶ 50). Defendants assert that Plaintiff's actions constitute a bad-faith breach of its agreement with Defendants on two occasions: (1) Plaintiff's failure to reimburse Defendants for Quandary's first-round review; and (2) Plaintiff's refusal to complete Quandary's second-round review and refusal to pay for Quandary's continued services associated with the second-round review. (*Id.* ¶ 51).

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled

to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft,* 556 U.S. at 679.

"[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. When conducting its inquiry, the Court "accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (citation modified).

## III. ANALYSIS

As noted, Defendants allege that Plaintiff breached its contract with Defendants in bad faith on two occasions: (1) when Plaintiff failed to reimburse Defendants for their share of the Quandary first-round review costs, and (2) when Plaintiff refused to complete the second-round review and to pay Quandary the

associated additional costs.[2] Defendants allege that Plaintiff refused to complete the Quandary second-round review because it wanted to continue using the lawsuit to discourage clients from working with Defendants. Plaintiff moves to dismiss the counterclaim on the grounds that Defendants were not entitled to reimbursement for the first-round review because the first-round review was incomplete. Defendants respond that Plaintiff's assertion that the review was incomplete raises factual disputes about the contract that are more appropriate for resolution at the summary judgment or trial stages. Defendants also add that Plaintiff failed to address Defendants' second breach-of-contract claim (*i.e.*, the agreement to conduct a second-round review).

Under Louisiana law, a cause of action for breach of contract requires showing: "(1) the obligor undertook an obligation to perform; (2) the obligor failed to perform the obligation, resulting in a breach; and (3) the failure to perform resulted in damages to the obligor." *JMF Med., LLC v. Team Health, LLC*, 490 F. Supp. 3d 947, 957 (M.D. La. 2020). An additional analysis is required for a bad-faith breach of

---

[2] It is not clear whether Defendant assert a bad faith breach of contract counterclaim against Plaintiff, or simply a breach of contract claim. *Compare* Doc. 151 at 13 (using "Count III – Breach of Contract" as a subheading), *with Id.* ¶ 52 (stating "[Plaintiff's] breach of its agreement with Counter-Plaintiffs was not in good faith") and *Id.* ¶ 53 (alleging that Plaintiff evaded the Quandary review to "drag out this proceeding" as an "anti-competitive weapon[.]"). However, the Court reads Defendants' counterclaim as a bad faith breach of contract counterclaim.

It is also not clear whether Defendants allege that Plaintiff's breach was in bad faith with respect to the first-round review, the second-round review, or both. Doc. 151 ¶¶ 53–54. However, the Court reads Defendants' counterclaim as applying the bad faith assertion to both instances of breach of contract.

contract claim: an obliger violates a contract in "bad faith" if he "intentionally and maliciously fails to perform his obligation." La. Civ. Code Ann. art. 1997 cmt. b. "[I]f Plaintiff's claim for breach of contract is dismissed, so too must the bad faith claim be dismissed. . . . This is so because if there is no valid claim for breach of contract, then, logically, there can be no claim for bad faith breach of the contract." *Johnson v. Am. Sec. Ins. Co.*, 650 F. Supp. 3d 483, 488, 488 n.34 (E.D. La. 2023).

The Court finds that Defendants have appropriately pled a bad-faith breach of contract counterclaim. With respect to the first alleged breach, the Court finds that an understanding of the terms, scope, and performance obligations under the agreement raises a factual issue that is more properly resolved at a later stage of the litigation. With respect to the second alleged breach, the Court finds that Defendants have adequately pled that the parties reached an agreement to conduct a second-round review, which Plaintiff then breached. Therefore, the Court denies Plaintiff's Motion with respect to Defendants' bad-faith breach of contract counterclaim.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's **Motion To Dismiss Counterclaims (Doc. 156)** is **DENIED WITHOUT PREJUDICE** as to Defendants' breach of contract counterclaim and **DENIED AS MOOT** as to all other counterclaims.

Baton Rouge, Louisiana, this 18th day of August, 2026

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**